Good morning, Your Honors. Frank Sparrow is appearing for Petitioner, and I'm present with Amicus Council, and we've decided I would cede my time to the Amicus Council if that's okay with the panel. Thank you very much. Good morning, Your Honors. My name is Dylan Karp, and I'm pro bono Amicus Cariad Council for the Petitioner, Miguel Perez-Torres. And I'd just like to try to make one point, and that is that the Attorney General does not deny that findings of fact underlying the hardship determination are non-discretionary. So given that, and given this Court's holding in Montero-Martinez, that this Court has jurisdiction to review legal determinations underlying the hardship determination because legal determinations are non-discretionary, I think the conclusion is inescapable that this Court retains jurisdiction to review the Board's erroneous fact finding that Mr. Perez-Torres stated that he could not recall when he last gave money to his father. And, counsel, if you're right about that, we have previously held that the finding of no hardship is discretionary, is unreviewable here. If you're right about findings of fact are not discretionary, then what's left of our holding of no jurisdiction to review those findings or to review the BIA's determination? Isn't everything open now? No. I mean, in the case, I think Romero-Torres was one of the – was, I think, the first published case that held that there's no jurisdiction to review the hardship determination, that the facts were undisputed. So certainly that remains. Well, if the facts are undisputed and you – and if you don't have any law, then you haven't got law or facts, so there is nothing to review. But if the law is reviewable, as you've told us, and the facts are law, and therefore they're reviewable, what can't we review? Well, you can't – you cannot review the hardship determination if the facts are undisputed, which apparently happens at least once a year. And there's no legal determination that we have to review either, right? Correct. Okay. So if we don't have any law or facts, then there's – nobody's going to bring an appeal if there's no law or facts to appeal, counsel, right? But usually we either get law or facts or some mixed question of law or facts. And that's not hard to – that's not hard to do. And if you're right, then everything's opened up to us again, isn't it? Well, and I think – and I think that if there's – if there's some kind of factual dispute that's not relevant to the determination, then that would not give rise to jurisdiction. In other words, the statute would still strip jurisdiction to review the hardship determination. If somebody's raised irrelevant facts. Exactly. That would be – it sounds like a very small subset of the cases we get. Yeah. True. Well, let me ask you this. Some of us have lived through some recent history with congressional efforts to strip courts of jurisdiction in the immigration field. Is your argument, supported by any legislative history, that Congress meant to carve this – make this distinction between ability to review – between the ability to review the determination of hardship and the determination of the facts supporting the claim of hardship? Your Honor, I don't know. In legislative history, in the sense of, like, floor statements or committee statements, I don't – I don't know. But this Court did a detailed review of the statute in Montero-Martinez and concluded that there is jurisdiction over nondiscretionary determinations because – well, the Court said it came to that conclusion because the statute uses the word judgment lots of times, and outside the context of a judgment of conviction, it always uses the word judgment to mean discretionary. Well, now, how does this work, then? Let's – If I'm right? No. How does this work? The fact – what is the fact here that's disputed, you say, that you want us to review? The I.J. and the Board said that Mr. Perez-Torres testified under oath that he could not recall when was the last time he gave any money to his father. And we claim that that is not supported by substantial evidence because it means He can recall? Or what? You're telling that, what, that he can recall? Exactly. Because the next words out of his mouth were it was 1 or 2 months before the hearing. He said, I can't recall what the last time I gave my father money, but it was 1 or 2 months before the hearing. He said, quote, last time, I don't remember, it was a month ago or 2 months ago. A month ago or 2 months. And it was $100. Correct. And the I.J. said, found? That the quotation from the administrative record is, quote, he stated, referring to Mr. Perez-Torres, that he cannot recall when was the last time any money was sent to his father. And you want us to review that and say that the evidence compels a finding instead that? He can recall when was the last time he sent money. That he can recall, and therefore, he is entitled to a determination of hardship? No, no, Your Honor. Therefore, I think the appropriate remedy is, we cite the Ng case for this. The appropriate remedy is to send the case back to the board to make the hardship determination based on the relevant facts and the correct facts. Counsel, where did the I.J. find that he had not provided any support to his father? It's the administrative record at page 40. Okay. And which paragraph? Okay, I see it. It's the second full paragraph on page 40. That's right. Okay. So you've got one sentence. He's got one sentence there. Down below, he says, there's no evidence to show his LPR father would go to Mexico with the respondent. Do you challenge that statement? No. Okay. How about the next one? There's no evidence to show his father currently depends on the respondent for his daily living or emotional support. Do you challenge that? No. No evidence to show the respondent has a close relationship with his father. Do you challenge that? No. Now, the only thing that you challenge is that he actually can recall that he gave his father $100 a couple of months previously. That's right, Your Honor. Okay. Now, let's suppose that we agreed with you, counsel, on the question of jurisdiction. And let's suppose we agreed with you that that's one statement is wrong. Okay. Do you get relief? I think so. I think the appropriate remedy is to send this case back to the Board. Send this back to the Board and say he can recall when the last time he gave his father, and even though we have all of these other statements which seem quite damning and which you've conceded here, there's still relief to be granted here? Yes, Your Honor, because I don't know exact – I don't know what decision the Board would come to. Well, you have to – you have to – don't you have to argue that we have to find that that – that that statement that Judge Bybee just – that alleged misstatement or the reliance on the – on the – the I.J. statement that he couldn't recall, that that is material to the determination of hardship? I think I do, and I think we have argued that. In the matter of Racina's case, the – one of the dispositive factors was what sort of monetary support the alien was giving to the lawful permanent resident relative, and the Attorney General has not denied that it's material. Counsel, sometimes when we get a BIA decision, we find – we find that sometimes the BIA says we adopt the I.J.'s decision and we get sort of a one-liner. Other times they get – they give their own decision. Sometimes we get a – we get a combination of that in which we say we affirm and adopt the I.J.'s decision, and then the Board adds some of its own findings. Which of those cases do we have here? It sounds like the third one. Okay. If we've got that, then we have – we adopt and affirm the decision of the I.J., and two paragraphs below that, the BIA says the respondent has failed to show sufficient hardship to his qualifying relative. Now why can't we rely on what the Board said there? Because within the I.J.'s decision, there are at least three very critical findings to the question of hardship which you have conceded here today. So why can't we – why can't we say that the BIA has issued an independent finding that there is insufficient hardship, and even though they failed to correct this one minor misstatement, that there is more than adequate evidence to support the BIA's decision? Because the circuit has held that when the Board adopts and affirms an I.J.'s decision, the Board is deemed to have independently reviewed everything in the I.J.'s decision. And that's what the Board has done here. It's adopted and affirmed it. So if there's one discrepancy in the I.J.'s decision, then it has to be remanded? No, I don't think so. I mean, if it's not a material fact, if it's not material to the hardship determination – Well, Judge Biley just characterized this as minor. Now, you disagree with that and say it's major? I do. I don't think the – I think the Attorney General – the Attorney General has not denied that this is a pertinent fact. It is major. The matter of Racine's case turned on this type of fact. It doesn't necessarily mean that it's so important that it undercuts the – that an inaccuracy undercuts the entire decision, which I think you would have to hold. Well, what do we have here more than – we have one statement of one payment of $100. We don't know how often he paid him. We don't know how much he paid him. We don't know what he needed in the way of money. We don't know who he lived with, how much they contributed to the father. I don't – how is this one payment that relevant? I can't – I can't prove to you that it would change the Board's decision if it – if it But you have to say it potentially would change the Board's decision. Exactly. I think I do have to say that. And I think under matter of Racine's, it is – it is a critical fact. When Petitioner last gave money to his father is a critical fact, and it's at least a pertinent fact. And under the in case, if a Board does not – when exercising its discretion does not look at all pertinent facts, it abuses its discretion. Thank you, Your Honor. Thank you. Your Honors, Christopher McGreal, on behalf of the Respondent, this Court should dismiss the petition for review because the Court lacks jurisdiction over the Board and immigration judge's discretionary determination that Petitioner failed to demonstrate an exceptional and extremely unusual hardship to a qualifying relative as required to establish his eligibility for cancellation of removal. Counsel, what do we do with – what do we do with the Petitioner's claim that findings of fact can be reviewed under certain standards of law, and therefore it's nondiscretionary? Well, here, the discretionary hardship determination is – it's a subjective evaluation of factors. Well, eventually. It is. But what happens if we thought that there had been – not even just clearer, but let's go beyond that and say some kind of gross misstatement of the facts on which the Board relied? In a situation like that, would we have jurisdiction to correct the mistake? Your Honor, first, I don't even think we have that situation here. I'm just giving you a hypothetical. Again, Your Honor, it would depend on what the situation was, but I would concede again that it was – it's the hardship at its heart is the immigration judge and the agency, through the Attorney General, weighing these factors. And it's such a subjective value without a legal standard. It's a weighing of the equities. And what we have here today is Petitioner just trying to challenge the balancing of the evidence of what the immigration judge determined. And that is, as we argued in our brief, intrinsically entwined. But it does look like we've got a misstatement, an overstatement by the IJ, don't we? Your Honor, it's – again, this is a discretionary determination. Counsel, it does look like we've got a misstatement, doesn't it? Don't we have a misstatement here? Your Honor, we only concede that there are – So the government's going to defend the statement that he couldn't recall when he'd given him the money? The fact that we're even just quarreling over this, I mean, it shows that this is about the deference. Well, Counsel, let's not quarrel. I'm sorry, Your Honor. I'm trying to be reconciled here, Counsel. I'm offering conciliation. Thank you, Your Honor. Again, it comes back to how the immigration judge is weighing the evidence. And he's giving more deference to, I don't remember. And then he's not even being told, is it a month or two ago? And then from this, the immigration judge draws this. That might be a credibility determination. No, Your Honor. He's weighing the evidence at this point. And it's at the discretionary of the immigration judge to make this determination. It's an underlining to it. Now, is that always – I'm going to – I find this difficult. What is the government's position, that because the hardship determination is discretionary, that therefore all facts underlying the hardship determination are unreviewable, all factual findings underlying are unreviewable? Is that the government's position? Or is it narrower than that? I mean, it depends on the case-by-case basis. But, Your Honor, it's – So you're not arguing as a broad principle. Well, actually, Your Honor, we probably would take that position, that it is a broad category because it is so intrinsically intertwined. Well, and let's suppose that in the hypothetical that there's a finding by the I.J. that he gave his father only $1,000 over a period of 5 years, and therefore he can't show that there's any undue hardship to the father. And it turns out that instead of $1,000, there was – had been a mistake, and that he had – and that it was really $100,000. Well, Your Honor – Why don't you say that we can't review the factual inaccuracy? Your Honor, this Court would not have jurisdiction, but the Board of Immigration of Appeals would, and that leads into an exhaustion argument that – Well, suppose that the BIA didn't correct it. Well, the BIA was never even put on notice because Petitioner before the – before the Board said, we're incorporating the facts of the immigration judge. And now Petitioner is – is – Well, in the – in the hypothetical, the BIA just does an affirmance. Again, Your Honor, I can't answer that because I – we haven't run into that situation yet. Well, I'm asking for the government's position. Again – You just said that the – that you were taking – you actually were arguing that the underlying fact is not – facts are not reviewable. So here you have a situation where there's no dispute that the mistake is made – is potentially material to the determination. So what – what – in any – what's the position? It's still unreviewable? Yes, Your Honor, because it's tied – intrinsically tied to the discretionary determination of the hardship. But I don't think we even reached that issue in – in this case because this particular – this – this particular argument wasn't even exhausted to the Board of Immigration Appeals. I don't think we're at that stage yet. The Board wasn't put on notice. So I don't think we're even reaching that because, one, we don't even – the Board was not put on notice. And, two, there isn't even a dispute in this case. You're saying that he didn't appeal on that ground? I'm sorry, but –  I'm sorry, Your Honor. He didn't appeal to the BIA on that ground? He didn't raise this in his appeal? He specifically put – in the first page of his appeal brief, I believe, at AR-13, he's saying, I want to incorporate the findings as found by the immigration judge. And the Board at that point is not even being put on notice. This is – is this – this case, the – it has not been exhausted before the Board, so we're not even reaching that. And regardless, we would contend that the facts aren't – there is no dispute. We're dealing with the weighing of the evidence, which is intrinsically entwined. Your Honors, I'd also like to, at this moment, I want to also specifically apologize also for the failure to address in Respondent's briefs the Court's request of October 16, 2006, what effect, if any, Petitioner's status under the Family Unity Program has on the Board of Immigration's appeal. This is an appeal dated December 17, 2004. We find that the – that this was an oversight. However, we feel that the Petitioner's subsequent approval application under the Family Unity Program has no bearing or effect on the underlining decision regarding the hardship determination. It involves stuff that would occur afterwards with the order of removal. His order of removal, because he's in the Family Unity Program now, is – is stayed or it's in a kind of deferral, so as long as he is part of the Family Unity Program. Is the determination of this petition going to have any effect on that? No, Your Honor. As long as he remains eligible under the Family Unity Program and continues to apply for these two years' extensions of voluntary departure, which he has now from March 2006 to March 2008, he'll be eligible again to apply. As long as he keeps applying, he will have an order of removal, but DHS will not execute that as long as he is in part of the Family Unity Program. What makes him eligible for the Family Unity Program? Your Honor, his father was part of the SAW Program. It's an agricultural program under 210A that he was here in 1988, the father, and that petitioner was 15 at the time and here. So, again, we specifically apologize for not addressing that in open and brief, but we feel that it is irrelevant to this case. There is one other matter, Your Honor, that we would like to bring to your attention. We note that in the Board's decision here, it's in light of this Court's decision in Padilla-Padilla, which was decided after the Board's decision. The immigration judge issued 60 days of voluntary departure. The Board then issued 30 days of voluntary departure, which this does not appear to be in line with this Court's decision in Padilla-Padilla. While we in the past have suggested to this Court in other cases that have dealt with this situation that it should be returned to the BIA on that limited issue only, we feel that that isn't the case here because petitioner is receiving these other two years of voluntary departure grants through the Family Unity Program, and as long as he stays eligible, which the eligibility requirements are laid out at 8 CFR 236.10 through 18 and continues to apply for that, that moots out any of the voluntary departure issues that you may have. But, Your Honor, this Court is at its discretion to, if it wants to return. The issue of Family Unity ever get decided? Well, Your Honor, the Family Unity is specifically under 8 CFR 236.10 through 18. It is within the realm of DHS, the Department of Homeland Security. And so that's something outside of the Board and immigration judge's jurisdiction. Down the road, and what Family Unity Program allows for, Petitioner, is to adjust his status. He's in this stay while his father could potentially petition for him and become a lawful permanent resident. Well, wait a minute. The Family Unity Program, there's some briefing about the question of whether or not it, what it moots. Are you, you're not contending that it moots the entire petition for review? Oh, no, no, no, Your Honor. No. Only the point with respect to voluntary departure. Only the point with voluntary departure and the pedia pedia situation of the 6030. No, we complete, we agree with opposing counsel that it does not moot the, as opposing counsel set out, it does not moot the, the petition for review is still relevant because we still have the cancellation of removal and auto removal. If we got to that question, what, what, what should we do? Which question? I'm sorry, Your Honor. The pedia question. Well, Your Honor, we would suggest, again, because of the Family Unity Program and these two years extensions of voluntary departure he's already receiving, that he's eligible, that he's already receiving more time than originally allowed. If he, if, if something happened here and he failed to make an application, those things could move pretty quickly, couldn't they? Your Honor, yes, they could. And then within your, your, this Court under pedia pedia. What does our pedia pedia decision say with, with, that we should be doing here? In this type of situation, and we have suggested in the past in similar cases that a return to the Board on the sole issue of voluntary departure would be necessary. But our contention is that he's already receiving these, these extensions of voluntary departure, but again, this is within the Court. It feels that it needs to be returned solely on the issue of the voluntary departure. That's within the Court's discretion. You're saying there's really no need to do that because the 60 days is being taken, the, the. He's already receiving. He's getting, he's getting at least that now. He's actually getting more time than he originally got, these two years extensions. But if you, Your Honor, feel to remand on that sole issue, then it should dismiss in part. He's going to continue getting it even if he were. As long as he stays eligible under 236-10218. And you're representing to the Court that our denial of the petition for review in other respects wouldn't have any effect on that. As long as he stays eligible and continues to apply for this, DHS does not. The petition has nothing to do with that eligibility. No, Your Honor. And again, we specifically apologize for not addressing that in the opening, in the opening brief. But again, our position is it, it, it's up to this Court's discretion of what, what they want to do in light of Padilla. In Padilla, our, our contention is he's already receiving these two, he's already under a two-year voluntary departure exception that goes up until March 2008. But it's so long as he stays eligible, DHS does not execute the order of removal. As long as he is eligible and part of the Family Unity Program and continues to seek these extensions. Okay. Thank you. Thank you, Your Honors. I'd like to, if I may ask indulgence, I'd like to ask counsel, Monique's counsel a couple of questions. First, do you disagree on this voluntary departure point with the government? Your Honor, that's over my head. Okay. But we'll ask his counsel, this counsel. And I'll ask you another question. It is abundantly clear that it's true. The Board cannot grant less voluntary departure than the IJ. That is the Padilla, Padilla and Asarte. As a practical matter, I will agree with the government. I did file the Family Unity, and that is essentially extended voluntary departure. That has a visa petition. So there's a happy ending here. And it's not having any, this petition won't have any effect. There will be no practical effect. Do you need us to clean this up? Or are you on top of this so that in the event it becomes necessary, you can get the Board or the IJ or somebody to make the correction? Well, the happiest result would be if we did send it back to the Board to correct the 60 days, the Board would suddenly have jurisdiction, at which point I would file a motion to administratively close, because that's something that can be done to Family Unity. So there would be a practical effect. It's, again, if we're in the realm of practicality, to correct the. Yeah. It's erroneous. I mean, essentially, if the judge gives 60 days' V.D., the Board must. Counsel, are you asking us to correct it now, or do we not need to? Let me put it this way. If you did, I would be quite pleased. However, I have to concede to the government. This might open another crack for something else. Exactly.  Now, on the question of the main question of the reviewability of the factual determination, was that issue raised to the BIA? Frankly, no. I mean, innumerable bitter experiences before various panels, I had raised that, and essentially I felt like General Custer. So my argument to the Board, frankly, was the poison mine theory, that the IJ clearly made an erroneous determination in terms of presence. She simply said he didn't provide any documentary evidence for his first two years when he was here. He was 14. And this Court in Vera Velagas clearly said that credible testimony is evidence. So our argument below really was that once. But the question that we asked amicus to brief was not raised. Do you want to comment on that? Sure. In our view, under the Beebe case at page 1040-41, a challenge to an IJ's factual finding is automatically administratively exhausted if the Board, as it did in this case, adopts and affirms the IJ's decision. But was there a challenge? No, there was no challenge. But it doesn't matter. Under the Beebe case, it doesn't matter, because the Board adopted and affirmed the IJ's factual finding. Oh, I see. So that this is because of the summary. But that seems to just go to the heart of the whole reason for exhaustion. Why would the Board, and this is all circular. The Board presumably wouldn't have adopted the IJ's findings if you had pointed out the mistake. That's not what the Beebe case held or reasoned. The Beebe case reasoned the opposite, that because the Board claims to have done its independent review and adopts the IJ's decision, it's irrelevant what was argued to the Board. Because we're reviewing, because what we said was, because what it said is, it's the IJ decision that's being reviewed. That's right, Your Honor. And Beebe was en banc. Okay. Thank you. Thank you, Your Honor. Case just argued is submitted for decision. We want to thank counsel for participating in our pro bono program. It was very well presented.
judges: Schroeder, Hall, Bybee